USCA1 Opinion

 

 March 9, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1854 RAILWAY LABOR EXECUTIVES' ASSOCIATION, ET AL., Plaintiffs, Appellants, v. GUILFORD TRANSPORTATION INDUSTRIES, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella and Cyr, Circuit Judges, ______________ and Keeton,* District Judge. ______________ _____________________ John O'B. Clarke, Jr., with whom Highsaw, Mahoney & Clarke, _____________________ ___________________________ P.C., were on brief for appellants. ____ Anthony R. Derosby, with whom Charles S. Einsiedler, Jr., ___________________ ___________________________ Julianne Cloutier, Pierce, Atwood, Scribner, Allen, Smith & __________________ ____________________________________________ Lancaster, Ernest J. Babcock, Mary Ann E. Rousseau, Friedman & _________ __________________ _____________________ __________ Babcock, John H. Broadley, and Jenner & Block, were on brief for _______ ________________ _______________ appellees. ____________________ March 9, 1993 ____________________ ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Circuit Judge. Appellants, Railway Labor _____________ 152 (1986). The district court dismissed appellants' complaint railway labor employees, allege that appellees1 abrogated Executives' Association and other labor unions representing appellants' collective bargaining agreements and representation rights in violation of the Railway Labor Act ("RLA"), 45 U.S.C. for abuse of market power. 49 U.S.C. 10505(a). Under 10505(a), the transaction is exempt from "the antitrust laws and from all other law, including [s]tate and municipal law, as ____________________ policy of the Interstate Commerce Act ("ICA"), and that the finds such regulation unnecessary to carry out the transportation transaction is of limited scope or does not create the potential Commerce Commission ("ICC") proceedings, we affirm the dismissal constituted an impermissible collateral attack on Interstate to craft, under separate agreements. After the acquisition, In the early 1980's, appellee Guilford acquired two BACKGROUND BACKGROUND __________ on different grounds than relied upon by the district court. lines initially belonged to separate unions, organized according railroad lines and their subsidiaries. The employees of these on unclear grounds. Because we find that appellants' claim brought all of the employees within the representation of the the Maine Central Railroad Company ("Maine Central"), the Springfield union. The ICC approved these transactions pursuant carriers. 49 U.S.C. 11343(a). Once the ICC approves these ("Guilford"), Boston and Maine Corporation ("Boston & Maine"), 1 Appellees include Guilford Transportation Industries, Inc. ____________________ to 49 U.S.C. 11343(a) (1992).2 Springfield Terminal Railway ("Springfield Terminal"). 2 The ICC must approve mergers and consolidations by rail Portland Terminal Company ("Portland Terminal"), and the Guilford leased these lines to Springfield, its subsidiary, and transactions, it may exempt them from other regulation if it Appellants sought declaratory and injunctive relief in the United States District Court for the District of Maine, alleging that appellees executed the leases in order to streamline appellants' union contracts in violation of the RLA. The district court dismissed the case for lack of subject matter jurisdiction, finding that the ICC had exclusive jurisdiction. See Railway Labor Executives' Ass'n v. Guilford Transp. Indus. ___ _________________________________ ________________________ ("RLEA I"), 667 F. Supp. 29 (D. Me. 1987), aff'd, 843 F.2d 1383 ______ _____ (1st Cir. 1988), cert. denied, 492 U.S. 905 (1989). _____ ______ Additionally, the court noted that by approving the lease transactions, the ICC exempted them from any law that would ________ impede the transactions pursuant to 49 U.S.C. 10505, and that according to Brotherhood of Locomotive Eng'rs v. Boston & Maine _________________________________ ______________ Corp., 788 F.2d 794 (1st Cir.), cert. denied, 479 U.S. 829 _____ _____ ______ (1986), "any law" includes the RLA. RLEA I, 667 F. Supp. at 35. ______ This court affirmed. Subsequently, the ICC ordered the parties to negotiate, and if necessary arbitrate, to achieve suitable protection for employees affected by the lease transactions. The arbitrator required appellees to honor pre-existing labor agreements, with several exceptions. On review, the ICC upheld the arbitrator's decision and held that this relief would not apply retroactively. It also determined that the affected employees were entitled to certain limited benefits. An appeal from this order is pending ____________________ necessary to let that person carry out the transaction . . . . " 49 U.S.C. 11341(a) (emphasis added). -3- before the Circuit Court of Appeals for the District of Columbia. In 1991, appellants brought the present action in the district court, again alleging RLA violations. This time, however, they requested damages arising out of "unauthorized actions," in contrast to the original action arising out of actions authorized by the ICC. The district court dismissed the claim, apparently relying on res judicata and a lack of subject ____________ matter jurisdiction. DISCUSSION DISCUSSION __________ I. Res Judicata I. Res Judicata It is unclear whether the district court determined that RLEA I precluded this case in its entirety or if it simply ______ found that RLEA I barred appellants from relitigating that case's ______ finding on the scope of the 11341 exemption.3 Thus, we address both issues. A. Claim preclusion A. Claim preclusion The res judicata doctrine provides that "a final _____________ judgment on the merits bars a subsequent suit on the same cause of action by the same parties and their privies." Walsh v. Int'l _____ _____ ____________________ 3 The court stated, "RLEA I dismissed the RLA claims on the ______ grounds that the 11341 exemption 'relieves the participants [in the exempted transaction] from any legal obstacles that would ___ impede the transaction. . . .' That ruling is res judicata and _____________ applies in all respects here." Appellants assert that the court decided that RLEA I precluded them from relitigating the scope of ______ the 11341 exemption, while appellees argue that the court held that RLEA I precludes appellants' entire claim. ______ Technically, res judicata represents claim preclusion, while ____________ collateral estoppel refers to issue preclusion. As evidenced by ___________________ this appeal, much confusion arises when courts use the terms interchangeably. -4- Longshoremen's Ass'n, 630 F.2d 864, 870 (1st Cir. 1980). ____________________ Superficially, the present case seems to fit within this test. RLEA I involved the same parties as the present ______ action. In addition, as the court in RLEA I dismissed the case ______ for a lack of subject matter jurisdiction, it rendered a final judgment on the merits. Id. (stating that once a court finds a __ lack of subject matter jurisdiction, res judicata bars ______________ relitigation of that issue). However, the present case does not involve the same cause of action as RLEA I. Although appellants ______ attack the same lease transactions that were in dispute in RLEA ____ I, they could not have asserted their present claims in that _ action, and thus cannot be precluded by res judicata. ____________ In RLEA I, appellants asked the district court to _______ prevent actions by appellees that the ICC had authorized; in the present case, they seek relief based on actions that the ICC never authorized. When appellees implemented the leases, the ICC informed them that it would impose labor protective conditions on the leases in a separate decision. ICC Finance Docket No. 30967, MEC-Lease, Notice of Exemption at 5-6, served January 23, 1987. The ICC specifically warned that if appellees proceeded with the leases and only minimal levels of protection,4 they would do so at their own risk. ICC Finance Docket No. 31015, B&M-Lease and Trackage Rights Exemption, Notice of Exemption at 6, served June ____________________ 4 The protections referred to are called Mendocino Coast ________________ conditions. They arose out of Mendocino Coast Ry., Inc. - Lease __________________________________ and Operate, 354 I.C.C. 732 (1978), as modified, 360 I.C.C. 653 ___________ ___________ (1980). -5- 5, 1987. Appellees continued implementing the leases and provided only minimal protections, allegedly violating the RLA in the process. It was not until February 19, 1988, almost a year after RLEA I, that the ICC decided to require additional labor ______ protections. Delaware & Hudson Ry. Co. - Lease and Trackage __________________________________________________ Rights Exemption - Springfield Terminal Ry. Co., 4 I.C.C.2d 322, ________________________________________________ 323 (1988). As appellees did not provide these additional protections until the ICC explicitly required them, their initial actions were unauthorized. Essentially, appellees gambled that they would convince the ICC that their actions should be authorized, and they were unsuccessful. Appellants could not have asserted their claims based on the lack of authorization of certain actions by appellees in RLEA I because they did not know during that litigation which ______ actions the ICC authorized. Thus, they are not precluded from asserting these claims now. Car Carriers, Inc. v. Ford Motor __________________ ___________ Co., 789 F.2d 589, 593 (7th Cir. 1986) (although mere change in ___ legal theory does not create a new cause of action, res judicata ____________ will not bar parties from raising issues that they could not have raised in first litigation); see also United States v. Alky ________ ______________ ____ Enters., 969 F.2d 1039, 1311 (1st Cir. 1992). _______ B. Issue Preclusion B. Issue Preclusion Appellants do not challenge the district court's finding of res judicata provided that, by res judicata, the _____________ ____________ district court meant issue preclusion with respect to the scope of the 11341 exemption. As the parties agree on this point of -6- law, we need not analyze it further. II. Relationship with the ICC decision II. Relationship with the ICC decision Having determined that res judicata does not bar this ____________ claim, we now decide whether appellants properly brought suit before the district court. Disputes concerning the interpretation or enforcement of the ICC's labor protective decisions must be resolved by arbitration or the ICC. Augspurger v. Brotherhood of Locomotive __________ _________________________ Eng'rs, 510 F.2d 853, 860 (8th Cir. 1975). ______ In the present case, the ICC and two arbitrators have thoroughly examined appellees' actions in implementing the leases. As a result, the ICC determined that employees of rail carriers who were adversely affected by the transactions were not entitled to retroactive relief, but were entitled to certain benefits. These benefits included a maximum of seventy five days of make-whole benefits and up to six years of protective period benefits beginning at the later of the effective date of the implementing agreement imposing the required conditions and the date when the adverse effect began. Finance Docket No. 30965 (Sub-Nos. 1 & 2), Delaware & Hudson Ry. Co. Lease and Trackage Rights Exemption -Springfield Terminal Ry. Co. at 15, served April 2, 1992. Appellants were unable to persuade the ICC that further labor protection could be reconciled with the essential purposes of the leases. If appellants disagree with the ICC determinations, their recourse is through appeal. Indeed, their appeal of the ruling is currently pending before another circuit -7- court. By asking the district court to make independent findings regarding the extent of labor protection which can be reconciled with the disputed leases, they are initiating an impermissible collateral attack upon the ICC's decisions, see ___ Boston & Maine Corp., 788 F.2d at 799, and risking the ________________________ possibility of inconsistent judgments between this court and the Court of Appeals for the District of Columbia. We cannot countenance such a situation. Thus, we affirm the district court's dismissal of the claim albeit on different grounds.5 Affirmed. ________ ____________________ 5 The district court apparently based its dismissal on the ground that the ICC, not the district court, should determine whether an exemption from the RLA is necessary to carry out the lease transactions as required by 11341. Since we affirm the district court's dismissal on the ground that the claim posed a collateral attack on an ICC determination, we need not reach this issue. -8-